**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Michael E. Romero**

| | |
|---|---|
| In re:<br><br>Ivy Tran Pham Ngo<br><br>Debtor. | Case No. 25-14867 MER<br><br>Chapter 11 |
| Franklin D. Azar & Associates, P.C.<br><br>Plaintiff,<br><br>v.<br><br>Ivy Tran Pham Ngo<br><br>Defendant. | Adversary No. 25-01318 MER |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

THIS MATTER comes before the Court on the Motion to Dismiss Adversary Complaint with Prejudice ("**Motion**") filed by Debtor/Defendant Ivy Ngo ("**Ngo**"), Plaintiff Franklin D. Azar & Associates, P.C.'s ("**Azar**") response thereto, and Ngo's reply.[1]

## BACKGROUND

Ngo commenced the underlying bankruptcy case on August 1, 2025. Pre-petition, Azar initiated a lawsuit against Ngo (the "**State Court Case**") in the Denver County District Court ("**State Court**").[2] The State Court Case was premised upon breach of contract claims Azar brought against Ngo. The jury in the State Court Case awarded Azar $4,000.00 for its breach of contract claims, and Azar was later awarded $106,660.70 for costs and $1,072,991.00 in attorney's fees for a total judgment of $1,183,651.70 (the "**State Court Judgment**"). Ngo appealed the State Court Judgment, and the appellate court ruled in Azar's favor. Azar then filed a Motion for Appellate Attorney's Fees in the amount of $422,600.62 ("**Appellate Fees**") (collectively, with the State Court Judgment, the "**Breach of Contract Debts**"), which is still pending.

In October of 2021, while the State Court Case was pending, Ngo transferred real property she owned ("**Property**") to her husband, Richard Rochelle ("**Rochelle**"). Ngo then gifted Rochelle $374,000.00 of her home equity, removed herself from the title

---

[1] ECF Nos. 9, 13, & 17.

[2] Case No. 2020-cv-30785.

to the Property, and transferred $850,000.00 to her parents. After discovering the transfers, Azar initiated another action against Ngo, her parents, and Rochelle in the State Court under Colorado's Uniform Fraudulent Transfers Act (the "**CUFTA Action**").[3] On May 19, 2025, the State Court entered its Findings of Fact and Conclusions of Law (the "**CUFTA Order**"), holding that the transfers violated CUFTA. As such, the State Court avoided Ngo's transfer of the Property and $374,000.00 to Rochelle, as well as her transfer of $850,000.00 to her parents. Azar then filed a motion seeking $1,037,967.08 in attorney's fees he incurred in prosecuting the CUFTA Action (the "**CUFTA Fees**"). As of the date of this Order, the State Court has not entered an order regarding the CUFTA Fees.[4]

Azar filed the instant adversary proceeding on November 3, 2025, asserting two claims against Ngo pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6). Ngo filed the instant Motion on December 30, 2025, asserting that Azar's Complaint should be dismissed for failure to state a claim.

## ANALYSIS

### A. Applicable Standard

Pursuant to Rule 12(b)(6) (incorporated by Fed. R. Bankr. P. 7012), a complaint may be dismissed for failure to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the plaintiff.[5] A complaint will be dismissed unless it "contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[6] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8] A plaintiff is not required to prove its case at the pleading stage, and the Court must not weigh potential evidence the parties may present at trial to test the sufficiency of the complaint.[9]

---

[3] Case No. 2023-cv-32912.

[4] Azar filed a motion for relief from stay in the underlying bankruptcy case to return to the State Court to finalize the CUFTA Fees and the Appellate Fees. Bankr. Case No. 25-14867-MER, ECF No. 51. The Court granted the motion on November 5, 2025. ECF No. 77. As of the date of this order, neither the CUFTA Fees nor the Appellate Fees have been fully adjudicated.

[5] *In re Matt Garton & Assoc.*, Adv. Pro. No. 21-1215-TBM, 2022 WL 711518, at *3 (Bankr. D. Colo. Feb. 14, 2022) (*citing Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013)).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[7] *Id.*

[8] *Id.* (Internal quotations omitted).

[9] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) ("The Court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial,

## B. Separate Debts with Separate Facts

As an initial matter, it appears Azar is asserting the Breach of Contract Debts and CUFTA Fees should be considered as one debt incurred under the same set of facts. In particular, Azar argues the conduct giving rise to the CUFTA Action and possible CUFTA Fees cannot be divorced from the conduct giving rise to the State Court Case and Breach of Contract Debts because both matters constitute one continuous course of conduct. The Court cannot agree. Each of the debts was incurred under different sets of facts. Indeed, the Breach of Contract Debts are premised upon Ngo's employment with and contractual obligations to Azar.[10] In contrast, the CUFTA Fees (if awarded) will be a debt incurred in connection with Azar's prosecution of the CUFTA Action. While the transfers giving rise to the CUFTA Action may have occurred during the pendency of the State Court Case, there are no allegations to suggest the State Court based the CUFTA Order (or will base the CUFTA Fees) upon any of the facts the Breach of Contract Debts are premised on. As such, the Court concludes the Breach of Contract Debts and the potential CUFTA Fees are two separate debts incurred for different reasons, and will analyze each of the debts separately under § 523(a)(2)(A) and (a)(6).

## C. The Court Will Not Make a Determination On Whether To Dismiss The Claims As To The CUFTA Fees At This Time

The Court acknowledges Azar has not yet obtained a monetary judgment in the CUFTA Action. The State Court merely avoided the transfers.[11] While Azar filed a motion seeking the CUFTA Fees, the State Court has not yet entered an order awarding those fees. As such, Azar has not yet obtained a debt in the CUFTA Action that could be excepted from Ngo's discharge. Therefore, the Court will not determine whether to dismiss Azar's claims with respect to the CUFTA Fees unless and until the State Court enters an order awarding those fees.[12] The Court will, however, make a determination with respect to the Breach of Contract Debts.

---

but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted."); *In re Bruecks*, 653 B.R. 187, 193 (Bankr. W.D. Okla. 2023) (quoting *Higginbottom v. Mid-Del School District*, 2016 WL 951691, at *2 (W.D. Okla. 2016); *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

[10] ECF No. 1, ¶¶ 8-10.

[11] The Court acknowledges the CUFTA Order stated that the State Court would enter a monetary judgment in Azar's favor for the $850,000.00 transferred to Ngo's parents if they did not deposit those funds into the State Court registry and make a claim against them. Ngo's parents did deposit the funds and made a claim against them. As such, the State Court did not enter a monetary judgment in Azar's favor for those funds, nor does Azar allege in its complaint that those funds constitute a debt owed to Azar.

[12] See *In re Martin*, 542 B.R. 199, 203 (6th Cir. BAP 2015) ("Accordingly, the bankruptcy court does not improperly abdicate its role by holding an adversary proceeding to determine the dischargeability of a potential debt in abeyance in order to allow completion of on-going state court litigation regarding the cause of action giving rise to the potential debt.").

## D. Section 523(a)(2)(A)

Azar's first claim for relief is for actual fraud under § 523(a)(2)(A).[13] In support of this claim, Azar alleges the Breach of Contract Debts are nondischargeable under § 523(a)(2)(A) because they are traceable to Ngo's fraudulent conveyance scheme, which he asserts began in the State Court Case.

Section 523(a)(2)(A) provides

> A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

To prevail on a claim for actual fraud under § 523(a)(2)(A), a plaintiff must show that: (1) the debtor committed actual fraud; (2) the debtor obtained money, property, services, or credit by the actual fraud; and (3) the debt arises from the actual fraud.[14] Actual fraud encompasses forms of fraud such as fraudulent conveyance schemes, which can be effected without a false representation.[15]

As the Court previously stated, it will analyze the Breach of Contract Debts separately from the potential CUFTA Fees. This includes only considering those facts that gave rise to the Breach of Contract Debts. After reviewing the complaint, the Court concludes Azar has not plausibly alleged the Breach of Contract Debts are nondischargeable under § 523(a)(2)(A). Indeed, the only facts Azar alleges regarding the State Court Judgment are that it was based upon a jury award for Azar's breach of contract claims.[16] Similarly, the only facts alleged with respect to the potential Appellate Fees are that they are predicated on Azar's prevailing in Ngo's appeal of the State Court Judgment.[17] Azar alleges no other facts that would lead the Court to conclude any part of the Breach of Contract Debts were obtained by actual fraud, false pretenses, or a fraudulent misrepresentation. Therefore, the Court will dismiss Azar's § 523(a)(2)(A) claim to the extent it seeks to except the Breach of Contract Debts from Ngo's discharge.

---

[13] Any use of the term "Section" or "§" hereafter means Title 11 of the United States Code unless otherwise stated.

[14] *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 10 (10th Cir. BAP 2016).

[15] *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 355, 359 (2016).

[16] ECF No. 1, ¶ 9.

[17] *Id.*, ¶ 14.

## E. Section 523(a)(6)

Azar's second claim for relief is under § 523(a)(6). Ngo argues this claim should be dismissed because the Breach of Contract Debts are not predicated upon a willful and malicious injury, nor were these debts transformed into debts for willful and malicious injury simply because of the subsequent CUFTA Action. Azar disagrees, and instead argues the transfers giving rise to the CUFTA Action constitute a willful and malicious injury inflicted upon Azar by Ngo. Azar further asserts its inability to collect the State Court Judgment is because of Ngo's willful and malicious conduct. Therefore, the Breach of Contract Debts can be excepted from Ngo's discharge under § 523(a)(6).

To prevail on a § 523(a)(6) claim, the plaintiff must prove: (1) an intentional act by the defendant; (2) done with the intent to harm; (3) which causes damages to the plaintiff; and (4) the injury is the proximate result of the action by the defendant.[18] The first element requires proof of a willful act. Willfulness "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[19] Courts have recognized two ways of establishing willful conduct. The debtor must either "desire to cause the consequences of his act or believe the consequences are substantially certain to result from it."[20] The latter "substantial certainty" test is not an objective test.[21] Instead, willfulness under both standards is a wholly subjective test dependent on the debtor's state of mind.[22] The second element requires proof of a malicious injury, distinct from willfulness. Malicious injury requires evidence of the debtor's motives. To be malicious, the debtor must have "acted with a culpable state of mind vis-à-vis the actual injury caused to the creditor.[23] The debtor's action must be "wrongful and without just cause or excuse."[24] An act may be malicious if taken "in conscious disregard of one's duties and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."[25] "[A]ll the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind." Both the first and second elements require proof of the debtor's intent.

---

[18] *Trans-West v. Mullins (In re Mullins)*, 2021 WL 2679137, at *6 (10th Cir. BAP June 30, 2021) (citing *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 790 (Bankr. D. Colo. 2002)).

[19] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[20] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (internal quotations omitted).

[21] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 913 (10th Cir. BAP 2020); *Via Christi Reg. Med. Center v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. Sept. 8, 2000).

[22] *In re Smith*, 618 B.R. at 913.

[23] *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 2022 WL 2679049, at *7 (10th Cir. July 12, 2022) (citing *In re Smith*, 618 B.R. at 913)).

[24] *In re Smith*, 618 B.R. at 919; see *In re Tsamasfyros*, 940 F.3d 605, 607 (10th Cir. BAP. 1991).

[25] *Id.* (citing *Dorr, Bentley & Pecha v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir. 1993)).

The Court concludes Azar's § 523(a)(6) claim should be dismissed to the extent it seeks to except the Breach of Contract Debts from discharge. Azar has not sufficiently shown the Breach of Contract Debts were obtained for a willful and malicious injury. The only facts Azar alleges in support of this claim, with respect to the Breach of Contract Debts, are that the State Court Judgment was incurred for Azar's breach of contract claims, and the potential Appellate Fees were incurred because Azar prevailed in the appeal of the State Court Judgment.[26] In fact, Azar alleges Ngo's willful and malicious conduct didn't take place until after he obtained the State Court Judgment.[27] Furthermore, it is well settled that breach of contract claims, without more, usually do not rise to the standard required to be excepted from discharge under § 523(a)(6).[28] Given that Azar alleged no facts that would lead the Court to conclude the Breach of Contract Debts are predicated on anything more than a simple breach of contract claim, the Court will dismiss this claim.

## F. Leave to Amend

Azar argues that in the event the Court determines any of its claims are not sufficiently pled, it should be granted leave to amend those claims. Amendments are governed by Rule 15(a) (incorporated by Fed. R. Bankr. P. 7015). Pursuant to Rule 15(a), a party may amend its pleading twenty-one days after it has been served or a motion under Rule 12(b) has been filed only with the opposing party's consent or with leave of the Court.[29] Ngo does not consent to Azar's request to amend.[30] Therefore, Azar may only amend its complaint with the Court's leave. "Whether to permit a party to amend its pleading is left to the sound discretion of the court."[31] The standard under Rule 15(a)(2) is lenient, especially where the purpose of the rule is to afford litigants the "maximum opportunity for each claim to be decided on its merits rather than on

---

[26] ECF No. 1, ¶¶ 9 & 14.

[27] *Id.* ¶ 81 ("Debtor's conduct was unquestionably willful and malicious towards Azar and its property interests. *After Azar obtained (or was on the verge of obtaining) the [State Court Judgment], Debtor intentionally set out to injure Azar's ability to collect that judgment* and the state court so found in the CUFTA Action") (emphasis added); see *Steier v. Best (In re Best)*, 109 Fed.Appx. 1, 5 (6th Cir. 2004) (finding efforts to thwart collection of a debt do not render it nondischargeable under § 523(a)(6) because they did not give rise to the debt).

[28] *Chavez v. Romero (In re Romero)*, 618 B.R. 526, 535 (Bankr. D.N.M. 2020) (citing *WLC Enterprises, Inc. v. Walter F. Rylant III (In re Rylant)*, 594 B.R. 783, 789 (Bankr. D.N.M. 2018)) ("While contract damages should only rarely be held nondischargeable under § 523(a)(6), it is reasonable to do so when the action that breached the contract was an intentional tort that comes within § 523(a)(6)"); *In re Best*, 109 Fed.Appx.1, at 6 ("Consistent with *Geiger*, with have held that a breach of contract cannot constitute the willful and malicious injury required to trigger § 523(a)(6)).

[29] Fed. R. Civ. P. 15(a)(1)-(2).

[30] ECF No. 22 at 6.

[31] *INDVR Brands, Inc. v. Mascio (In re Mascio)*, 2025 WL 3672883, at *12 (Bankr. D. Colo. Dec. 17, 2025) (citing *Las Vegas Ice and Cold Storage Co v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006); *Church Mut. Ins. Co. v. Coutu*, 2018 WL 822552, at *2 (D. Colo. Feb. 2, 2018)).

procedural niceties."[32] Courts consider several factors when deciding whether to grant leave to amend, including: (1) whether the amendment would cause undue delay; (2) whether the amendment would cause undue prejudice to the opposing party; (3) whether the moving party is seeking the amendment in bad faith or has a dilatory motive; (4) whether the moving party failed to cure deficiencies by amendments previously allowed; and (5) whether the amendment would be futile.[33] "The most important factor in deciding to amend the pleadings is whether the amendment would prejudice the nonmoving party."[34] "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment. Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[35]

*1. The Court Will Grant Azar Leave to Amend its § 523(a)(6) Claim*

Azar argues, for the first time, in his supplemental brief that the Court mischaracterizes the State Court Case as a simple breach of contract action.[36] Instead, Azar argues the Breach of Contract Debts were the result of Azar having to defend Ngo's scorched earth counterclaims in a proceeding that was prolonged by Ngo's perjury and fabricated evidence. As such, Azar requests leave to amend the complaint.

The Court concludes a majority of the factors weigh in favor of granting Azar leave to amend. This proceeding is still in its infancy; a scheduling order has not yet entered, nor has a trial date been set. The amendment will not prejudice Ngo because she has not yet filed an answer and therefore will have time to prepare and allege affirmative defenses in the event the amendment resolves the pleading deficiencies and Azar's claim is allowed to proceed. While the Court questions why Azar didn't allege these facts in the complaint, there is nothing to suggest it is seeking the amendment in bad faith. Further, this is the first time Azar has asked to amend the complaint, and the Court believes allowing Azar to amend may cure the pleading deficiencies such that the Court may decide the claim on its merits. Therefore, the Court will permit Azar to amend its § 523(a)(6) claim as it pertains to the Breach of Contract Debts.

---

[32] *Id.*; *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019 (10th Cir. 2018).

[33] *In re Mascio*, 2025 WL 3672883, at *12.

[34] *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1207-08 (10th Cir. 2006).

[35] *Id.*, at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)).

[36] ECF No. 21 at 2.

*2. The Court Will not Permit Azar to Amend its § 523(a)(2)(A) Claim*

While the Court believes permitting Azar to amend its § 523(a)(6) claim may cure the pleading deficiencies, the same cannot be said for its § 523(a)(2)(A) claim. Indeed, Azar alleges no facts nor makes any argument in its response to the Motion or supplemental brief that would lead the Court to conclude any portion of the Breach of Contract Debts were obtained by actual fraud, a false misrepresentation, or by false pretenses. As such, the Court concludes amending this claim would be futile and will therefore not allow Azar to amend this claim as it pertains to the Breach of Contract Debts.

**CONCLUSION**

Given the above, the Court

ORDERS the Motion is GRANTED in part. Azar's § 523(a)(2)(A) claim is DISMISSED to the extent it seeks to except the Breach of Contract Debts from Discharge. The Court

FURTHER ORDERS Azar's § 523(a)(6) claim is DISMISSED to the extent it seeks to except the Breach of Contract Debts from Discharge. The Court

FURTHER ORDERS Azar is permitted to amend his § 523(a)(6) claim with respect to the Breach of Contract Debts. The Court

FURTHER ORDERS the Court will set a status conference by separate order so the Court and the parties may discuss the timing of an amended complaint and the current status of the CUFTA Fees.

Dated August 28, 2026

BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court